# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

TINA M. BOLEN,                )
                              )
      Plaintiff,         )
                              )
vs.                           )    CAUSE NO. 1:19CV34-PPS
                              )
ANDREW M. SAUL,               )
Commissioner of Social Security, )
                              )
      Defendant.         )

## OPINION AND ORDER

Tina Bolen applied for social security disability benefits at age 43, after some years working in a nursing home and as a cashier and stocker in retail stores. [AR at 40-43.][1] She alleged that she had become disabled the year before. An administrative law judge found that Bolen has a number of severe impairments: degenerative disc disease of the spine; oseteoarthrosis; Achilles tendon rupture/Achilles tendinosis; Haglund's deformity; gastrocnemius contracture of the bilateral feet, status post surgical repair; migraines; and obesity. [AR at 17.] Bolen's application was denied based on the ALJ's determination that she had the residual functional capacity to perform light work, subject to certain limitations, and that there are jobs in significant numbers in the national economy that Bolen can perform. [AR at 22, 28.] In this appeal of that decision, Bolen offers three challenges to the ALJ's determination.

---

[1] The administrative record [AR] is found in the court record at docket entry 12, and consists of a total of 612 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

## **Discussion**

My review of the Commissioner's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

**Opinion of Consultative Examiner Dr. Boen**

Bolen's first argument is that in determining her residual functional capacity the ALJ did not properly weigh the opinion of the Commission's examining psychologist, Dr. Dan Boen, Ph.D. In particular, Bolen focuses on two of Dr. Boen's opinions, namely that Tina would have trouble understanding what she was asked to do on a job, and would have trouble getting along with coworkers. [DE 17 at 7, AR at 288.][2] These two conclusions are cherry-picked by Bolen out of a paragraph that also contains these statements by Dr. Boen: "Tina can remember what Tina was asked to do on a job. Tina would be able to concentrate on the job. Tina would be able to stay on task...Tina would be able to get along with a boss." [AR at 288.]

The ALJ's opinion notes all these conclusions, and determines to disregard the more limiting opinions Bolen now highlights because:

> despite Dr. Boen's examining relationship, specialty, and programmatic knowledge, it is only somewhat consistent with the overall medical evidence in the file, which demonstrates the claimant does not have more than mild limitations in her ability to understand information or more than mild limitation in getting along with others, as discussed below.

[AR at 19.] The ALJ then goes on to consider what the record discloses concerning Bolen's limitations in the four areas of mental function set out in the disability

---

[2] Bolen's first argument contains two passing references to her prescription for Cymbalta and Dr. Boen's diagnosis of major depressive disorder. [DE 17 at 12.] I am unable to determine what, if any, legal arguments these comments of Bolen's suggest in this context. I conclude that these entirely undeveloped arguments provide no basis for reversal. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (arguments that are perfunctory, undeveloped, or unsupported by pertinent authority are waived). Both of those matters – Cymbalta and major depressive order – are addressed in the later context of Bolen's second argument, and I will address them further below.

regulations for evaluating mental disorders. [*Id*.] The first two of these areas coincide with the subject matter of Dr. Boen's relevant conclusions: "understanding, remembering, or applying information" and "interacting with others."

The ALJ concludes that Bolen has only mild limitation in understanding, remembering, or applying information. Acknowledging that Bolen alleged she needs reminders to go place, and that her husband testified as to her memory issues, the ALJ noted that "the claimant also stated she does not need reminders to perform her personal needs and grooming and does not need reminders to take medications," that at her examination by Dr. Boen she was "able to recall three out of three objects immediately[,] two out of three objects after five minutes…[and] five digits forward and four digits backward." [AR at 20.] The ALJ had earlier noted that in Dr. Boen's exam Bolen "performed well on information and vocabulary testing," and that her "level of intelligence" and "fund of information" were normal. [AR at 19.] At the same time, the ALJ noted deficits in some mental capacities such as concentration, judgment and level of insight. [*Id*.] As usual, the evidence was varied and did not all point in the same direction. Nonetheless, all told, after a detailed and careful review of the evidence, the ALJ's conclusion that Bolen was only mildly limited in understanding, remembering, or applying information appears to be supported by substantial evidence. My role is not to reweigh evidence or substitute my judgment for that of the Commissioner. *Burgos v. Saul*, 788 Fed.Appx. 1027, 1030 (7th Cir. 2019).

The same can be said of the conclusion that Bolen has only mild limitation in interacting with others. The ALJ observed that Bolen had "alleged she keeps to herself and does not know her neighbors, but she spends time with her family," and "is able to shop in stores and said she has no problems getting along with authority figures." [AR at 20.] Also Bolen "is able to live with others, has been noted as cooperative at examinations, and has not had documented problems with interactions with medical or non-medical staff." [*Id*.] Bolen cites no other evidence of record to support a conclusion that she has more than mild difficulty in interacting with others.

As the ALJ noted, two State agency psychological consultants (Kari Kennedy, Psy.D., and William A. Shipley, Ph.D.) both concluded, after considering Dr. Boen's report and the larger record, that Bolen had only mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. [AR at 86-88; 99-101.] The consultants' analysis includes the observation that Bolen's work history argues against her intelligence being severely limiting, and that her performance at Boen's examination and her work history don't support the existence of any significantly limiting memory disorder. [AR at 87, 100.]

Bolen's citation to *Bearsdley v. Colvin*, 758 F.3d 834 (7th Cir. 2014) is unhelpful to her argument. *Beardsley* underscores that an ALJ can be expected to have a good explanation for the "unusual step" of rejecting an agency examining physician's opinion that a claimant is disabled in favor of a record reviewer's contrary analysis. *Id*. at 839. But that's not the situation here. Dr. Boen did not conclude that Bolen was disabled. And the

ALJ provided a lengthy and sound explanation for his conclusion that in the pertinent areas of functioning, Bolen's limitations were merely mild ones. "'Where conflicting evidence allows reasonable minds to differ as to whether a clamant is entitled to benefits,' the court must defer to the Commissioner's resolution of that conflict." *Id*. at 837, quoting *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**<u>Non-Severe Mental Impairments</u>**

Bolen next argues that the ALJ failed to adequately incorporate RFC limitations reflecting the combined effect of all her impairments, severe and non-severe, particularly considering the impacts of major depressive disorder, anxiety disorder and borderline intellectual functioning. [DE 17 at 12.] The ALJ concluded that Bolen's "medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." [AR at 18.] The ALJ's analysis of these mental impairments is lengthy and detailed. [AR at 18-21.]

The ALJ reviewed in detail the record of Dr. Boen's mental consultative exam, including his diagnosis of major depressive disorder and generalized anxiety disorder. [AR at 18-19.] The ALJ set out mental health aspects of Bolen's visits to doctors for physical issues. [AR at 19.] This included Bolen's report of anxiety on March 22, 2016, which was treated with a trial prescription of Cymbalta for generalized anxiety disorder. [AR at 452, 453, 455.] At her follow-up visit on April 12, 2016, Bolen reported that "the cymbalta is helping a lot." [AR at 457.] During Bolen's office visit on November 14, 2016,

6

she reported increased anxiety and mood swings, and her Cymbalta dosage was increased. [AR at 483, 486, 487.]  At her next follow-up on December 6, Bolen reported that "she is doing well with the increased cymbalta dose." [AR at 488, 491.]  As she continued on Cymbalta, the record of Bolen's July 13, 2016, July 26, 2016, August 29, 2016, and October 18, 2016, December 20, 2016, February 9, 2017 visits reflects no complaint concerning anxiety or depression.  [AR at 462, 467, 472, 477, 493, 498.]  On May 23, 2017, Bolen stated that her generalized anxiety disorder was "controlled at this time," and that although "she has a lot going on in her personal life right now…that it isn't anything that she can't handle." [AR at 503.]

After reviewing this history, the ALJ considered the determinations of the two state agency consultants who found no severe mental impairment.  [AR at 19.]  Finally, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders.  Applying that analysis to the medical record and Bolen's testimony, he concluded that Bolen has only mild limitations in the areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting or maintaining pace, and no limitations in adapting or managing oneself.  [AR at 19-20.]

The ALJ ultimately indicates that "[a]lthough I have determined these impairments are non-severe, the limiting effects of all the claimant's impairments, even those that are not severe, were considered in determining the claimant's residual functional capacity assessed below." [AR at 21.]  The RFC contains no limitations based

7

on mental impairments. The ALJ's review and analysis of the record is based on substantial evidence. Even if a determination that major depressive disorder and generalized anxiety disorder were non-severe was error, it was harmless and does not merit remand where the four criteria for mental functioning disclose no more than mild limitations and the mental impairments were otherwise considered in determining the RFC. *See Davis v. Berryhill*, 723 Fed.Appx. 351, 356 (7th Cir. 2018); *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).

Bolen's argument is predicated on Dr. Boen's diagnoses of depression and anxiety disorder, and his "notation" of borderline intellectual functioning. But the ALJ makes clear he took all of those matters into account, as he did the particulars of Dr. Boen's "Summary and Conclusion" and "Medical Source Statement." Bolen points to no other evidence of record as to mental impairments or their impact on her functioning. Cymbalta appears to have controlled Bolen's anxiety disorder, and the record is devoid of further information on depression or its impact. Bolen "bears the burden of producing medical records showing her impairment, and if she never sought medical treatment for a condition, then she cannot meet that burden." *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). I agree with the Commissioner that although Bolen asserts that the ALJ's RFC omitted mental impairment limitations, Bolen "has not identified any work-related functional limitations supported by the evidence of record that the ALJ omitted from the RFC." [DE 18 at 9.]

**Daily Activities**

Bolen's final challenge is that the ALJ unduly relied on Bolen's daily activities to discredit the extent of her limitations. [DE 17 at 15.] In evaluating whether a claimant exaggerates the effects of her impairments, an ALJ must consider the claimant's activities of daily living. *Green v. Saul*, 781 Fed.Appx. 522, 526 (7th Cir. 2019); 20 C.F.R. §404.1529(c)(3)(i). Bolen does not claim that the ALJ misstated her ability to perform daily activities. Nor does she contend that he erroneously equated her activities of daily living with an ability to engage in full-time work. *Id.* at 527. Bolen merely complains that the ALJ failed to account for factors such as help from others and the absence of workplace standards, which can indicate that the performance of certain activities is not equivalent to the performance of full-time gainful employment. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). But Bolen does not demonstrate that the passages she cites from the ALJ's decision [DE 17 at 15 n.45, at 16, n.46] suffer from these deficiencies.

In the first such passage, the ALJ notes that Bolen is apparently capable of walking a dog on a leash and has provided childcare for her cousins' children. [AR at 25.] In the second passage, the ALJ accurately recounts Bolen's mother's statements of Bolen's capacities, including cooking for her family, "perform[ing] chores slowly," driving, shopping and managing money. [AR at 26.] Rather the concluding directly from these circumstances that Bolen is not disabled, the ALJ merely reasonably determined that Bolen's "statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the

9

record." [AR at 26.] As in *Green*, the ALJ tailored an RFC that fit the claimant's limitations, "though not necessarily the intensity to which she testified," and in doing so, "was not 'patently wrong.'" 781 Fed.Appx. at 527, quoting *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) (an ALJ's credibility determination may be overturned only if it is patently wrong).

## Conclusion

As is true of every claimant for Social Security disability benefits, Tina Bolen has significant health challenges. But "having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work." *Weaver v. Berryhill*, 746 Fed.Appx. 574, 578-79 (7th Cir. 2018). To qualify for benefits, Bolen bears the burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Id*. at 579.

It is also important to recognize that the scope of judicial review is limited. I find that the ALJ sufficiently articulated his findings and conclusions to permit meaningful judicial review, so that a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Hawkins v. Saul*, 2019 WL 6492491, at *1 (7th Cir. Dec. 3, 2019). Applying these standards, I will affirm the denial of disability benefits.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Tina M. Bolen's application for social security disability benefits is AFFIRMED. The Clerk shall enter judgment in favor of defendant Commissioner and against plaintiff.

**SO ORDERED**.

ENTERED: March 4, 2020.

    /s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**